IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRI L. B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-cv-00406-SH |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Terri L. B. seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

**I.      Disability Determination and Standard of Review**

Under the Act, an individual is disabled "if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. 20 C.F.R. § 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, however, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff protectively applied for Title XVI benefits on November 17, 2020. (R. 236-44.) Plaintiff alleged she has been unable to work since January 1, 2019, due to Raynaud's disease, artery disease, sciatic nerve pain, depression, and anxiety. (R. 236, 264.) Plaintiff was 52 years old at the time of the ALJ's decision and has a high school education. (R. 25, 236, 265.)

Plaintiff's claim for benefits was denied initially and upon reconsideration. (R. 99-101, 108-12.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was conducted on December 13, 2021. (R. 32-72, 116-18.) ALJ Deborah Ellis issued a decision on February 9, 2022, finding Plaintiff not disabled. (R. 15-25.) The Appeals Council denied review on July 20, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Plaintiff now appeals.

## III.   The ALJ's Decision

In her decision, the ALJ found at step one Plaintiff had not engaged in substantial gainful activity since the application date of November 17, 2020. (R. 17.) At step two, the

ALJ found Plaintiff had the severe impairment of degenerative disc disease.[2] (*Id.*) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 20.)

The ALJ then determined Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. § 416.967(b) except she can occasionally climb ladder[s], ropes, or scaffolds; frequently handle and finger bilaterally; must avoid concentrated exposure to unprotected heights and moving mechanical parts; and can frequently use the left lower extremities for foot controls." (*Id.*)  The ALJ then provided a recitation of the evidence that went into this finding.  (R. 20-23.)

At step four, the ALJ found Plaintiff had no past relevant work.  (R. 23.)  At step five, based on the testimony of a vocational expert ("VE"), the ALJ found Plaintiff could perform work that existed in significant numbers in the national economy, such as marker, inspector/hand packager, and routine clerk.  (R. 23-24.)  Accordingly, the ALJ concluded Plaintiff was not disabled from November 17, 2020, through the date of the decision.  (R. 24-25.)

## IV. Issues

Plaintiff asserts the ALJ erred by failing to provide support for an RFC that limited Plaintiff to light work and with no additional limitations on her ability to stand or walk during a workday.  (ECF No. 16 at 5.)

---

[2] The ALJ found other impairments to be non-severe or not medically determinable. (R. 17-20.)  Plaintiff does not contest these findings on appeal, nor does Plaintiff argue the RFC failed to account for any limitations resulting from these impairments.

**V.     Analysis**

Plaintiff argues that the ALJ "failed to explain how the RFC was supported" after finding Plaintiff's "subjective reports were unsupported[] and discounting the only medical opinion." (ECF No. 16 at 5-6.) That is, the agency doctors found that Plaintiff had no severe impairments (R. 79, 90) and, therefore, did not provide an opinion as to her residual functional capacity (R. 81, 92). As such, Plaintiff relies on her subjective statements for the assertion that she has any limitation in her ability to stand or walk more than occasionally.[3] The Court, therefore, will first address Plaintiff's sub-argument that the ALJ improperly discounted her symptoms without an adequate explanation. (ECF No. 16 at 7-12.) The Court will then consider Plaintiff's argument that, having discounted these symptoms, the ALJ's RFC was unsupported. (ECF No. 16 at 6-7, 12-13.)

   **A.     The Evaluation of Plaintiff's Subjective Symptoms is Supported by Substantial Evidence**

The undersigned first considers whether the ALJ properly evaluated Plaintiff's subjective allegations of pain and symptoms. After reviewing the ALJ's decision, the Court finds she did.

      **1.     The Standards for Evaluating Pain and Other Symptoms**

Upon review, the Court is limited to determining the propriety of the legal standards the ALJ applied and whether the decision is based on substantial evidence. *Grogan*, 399 F.3d at 1261. In determining whether a decision was based on substantial

---

[3] Plaintiff argues that an RFC with the appropriate limitations in walking and standing would have left her with only sedentary work (ECF No. 16 at 12), which means "walking and standing are required occasionally," 20 C.F.R. § 416.967(a). To qualify as light work, the job may require more than occasional walking or standing—or even a "good deal of walking or standing"—or it could involve "sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 416.967(b).

evidence, one of the Court's duties is to review the ALJ's evaluation of Plaintiff's subjective symptoms,[4] including pain. *See generally* 20 C.F.R. § 416.929. When evaluating a claimant's symptoms, the ALJ uses a two-step process.[5] Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 416.929(b)-(c). First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b). Second, once such impairment(s) are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so she can determine how the symptoms limit the claimant's capacity to work. *Id.* § 416.929(c)(1).

Factors the ALJ should consider include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) other factors concerning functional limitations and restrictions due to the symptoms. *Id.* § 416.929(c)(3)(i)-(vii). The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). The ALJ's decision

---

[4] *See* 20 C.F.R. § 416.902(n) (defining "symptoms" as the claimant's "own description of [her] physical or mental impairment").

[5] Tenth Circuit precedent has characterized this as a three-step process. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). The analysis under SSR 16-3p comports with the *Luna* process. *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016). But, the term "credibility" is no longer used. SSR 16-3p, at *2.

"must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *10. Because consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).

### 2. The ALJ's Analysis of Plaintiff's Symptoms

The ALJ summarized Plaintiff's administrative hearing testimony in her written decision. (R. 21.) Relevant to this appeal, the ALJ specifically acknowledged Plaintiff's testimony that she can only stand for 30-45 minutes at a time, sit for 30 minutes at a time, and lies down most of the day to due to back pain and leg weakness. (*Id.*) The ALJ also noted Plaintiff was not able to seek medical treatment for a period of time because she did not have health insurance. (*Id.*) The ALJ then provided the following introduction to the portion of her opinion analyzing the medical evidence as compared to Plaintiff's statements of her symptoms:

> The medical evidence fails to fully substantiate the claimant's allegations of totally disabling symptoms.[6] Although objective testing and clinical

---

[6] Plaintiff faults the ALJ for using the phrase "totally disabling symptoms," when the real issue was Plaintiff's "difficulties in standing and walking throughout the workday." (ECF No. 16 at 8.) Plaintiff, however, takes the ALJ's statement out of context. Immediately preceding this paragraph, the ALJ noted Plaintiff was claiming disability "due to Raynaud disease, artery disease, sciatic nerve pain, depression, and anxiety," and then noted Plaintiff's subjective testimony as to the limitations in her abilities to sit or stand, that she "laid down during the day due to leg weakness and pack pain," and that she "has pain in her hands." (R. 21.) And, as Plaintiff notes, if she had a limitation to sedentary work, due to her standing and walking limitations, the ALJ would be required to find her disabled under the grids. (ECF No. 16 at 12-13.) The ALJ's notation, therefore, is perfectly understandable as referring to Plaintiff's stated limitations in the ability to stand, walk, and use her hands.

7

> observations identify abnormal pathology consistent with diagnosis and treatment for degenerative disc disease, the evidence further demonstrates minimal clinical abnormalities on examination. . . . Consequently, the claimant's symptoms never reached nor maintained a level of disability.

(*Id.*)  The ALJ then pointed to several pieces of objective medical evidence of record, including: (i) a November 2020 exam where Plaintiff's gait was normal when walking, and she had intact flexion and extension in her left lower extremity hip and knee (R. 21 (citing R. 337)); (ii) an April 2021 examination showing Plaintiff had lumbar tenderness (*id.* (citing R. 392-93)); (iii) a September 2021 x-ray showing mild lumbar degenerative changes (R. 22 (citing R. 512)); (iv) a November 2021 examination finding Plaintiff had 5/5 strength on all tested areas in her bilateral lower extremities, normal straight leg raise bilaterally, no tenderness or palpation in the greater trochanter, normal active and passive range of motion in hips, and no pain in both internal and external hip rotation (*id.* (citing R. 561)); (v) a November 2021 MRI showing "an L4-5-disc bulge with left foraminal disc protrusion, mild facet arthropathy and ligamentum flavum thickening resulting in mild canal stenosis, and mild right, and severe left foraminal narrowing" (*id.* (citing R. 523)); and (vi) a subsequent, December 2021 examination finding Plaintiff had an antalgic gait but was able to bear weight on the injured extremity, 70 hip flexion, +10 extension, 30 lateral rotation on the right and left, 20 lateral bending on the left and right, 5/5 strength on all tested areas in her bilateral lower extremities, normal straight leg raise bilaterally, no tenderness or palpation in the greater trochanter, normal active and passive range of motion in hips, and no pain in both internal and external hip rotation (*id.* (citing R. 580-581)).  The ALJ also noted Plaintiff's history of minimal and conservative treatment, particularly for Plaintiff's degenerative disc disease, which had only been treated with pain medication and seven physical therapy visits in October and

8

November of 2021. (R. 22-23.) The ALJ further noted Plaintiff had received a referral for orthopedic surgery, but no evidence was submitted showing she had followed up on this referral, and Plaintiff had a cane with her at physical therapy, but this was new and not prescribed by any doctor. (R. 23.) The ALJ went on to conclude,

> The undersigned considered the claimant's allegations and found them neither consistent nor well supported by the objective medical findings, the claimant's statements about her activities, her minimal medication regimen, and her doctor's observations.

(R. 23.)

### 3. The ALJ's Symptom Findings are Supported by Substantial Evidence and Adequately Explained

Plaintiff asserts the ALJ failed, in various ways, to support her discounting of Plaintiff's symptoms relating to standing and walking. Plaintiff particularly asserts (1) the ALJ improperly found Plaintiff demonstrated "minimal clinical abnormalities on examination" while ignoring other evidence; (2) improperly found Plaintiff had only received "minimal and conservative treatment," when she initially lacked health insurance and was referred to orthopedic surgery after the hearing; and (3) failed to link her discussion of the medical evidence to Plaintiff's symptoms. (ECF No. 16 at 7-12.)

The Court finds no error in the ALJ's consistency analysis. As set forth above, the ALJ provided numerous reasons for finding Plaintiff's symptoms were not as severe or limiting as alleged, and a review of the record confirms these reasons are supported by substantial evidence. The ALJ's analysis reflects that she considered the location, duration, frequency, and intensity of Plaintiff's symptoms (R. 21-22[7]); precipitating and

---

[7] Noting, e.g., Plaintiff's testimony as to the limits of her standing and sitting (R. 21) and Plaintiff's reports to providers of her multi-year history of back pain, "constant pain," and range of pain from 3/10 to 9/10 (R. 22).

aggravating factors (*id.*[8]); the type and effectiveness of medications (*id.*[9]); her treatment aside from medication (R. 22-23[10]); and measures she took to relieve the symptoms (R. 21[11]). *See* 20 C.F.R. § 416.929(c)(3); *see also* SSR 16-3p, at *7-8. The ALJ did all that was required.

Plaintiff first takes issue with two of the ALJ's statements—that there were "minimal clinical abnormalities on examination" and the "objective medical evidence does not show that the claimant's impairments would prevent her from performing a limited range of light work activity." (ECF No. 16 at 9 (citing R. 21, 22).) Taking these statements out of context, Plaintiff claims it is notable that "neither . . . was supported by any citations to the record." (*Id.*) Plaintiff ignores that these two statements bookend the entirety of the ALJ's discussion of the medical evidence—including numerous medical observations of normal gait, intact flexion and extension, full strength, normal leg raises, normal range of motion, and one exam with less positive findings, as well as an x-ray showing mild lumbar degenerative changes and an MRI showing bulging, several mild issues and severe left foraminal narrowing. (R. 21-22.) The ALJ's statements did not lack for record citations.

---

[8] Noting, e.g., Plaintiff's reports of lumbar tenderness with an attempted straight leg test at times (R. 21), that walking was her biggest problem (R. 22), and of no pain on palpation in the greater trochanter or with hip external or internal rotation (*id.*).

[9] Noting multiple medications prescribed to Plaintiff, as well as Plaintiff's report that Baclofen did not work for her. (R. 21-22.)

[10] Noting, e.g., Plaintiff's physical therapy appointments and referrals to a pain clinic and for orthopedic surgery, as well as the lack of evidence Plaintiff followed up on these referrals. (R. 22-23.)

[11] Noting Plaintiff's testimony that she "mainly laid down during the day due to leg weakness and back pain." (R. 21.)

Instead, Plaintiff essentially asserts there was also record evidence to support her subjective reports of pain and other functional limitations. (ECF No. 16 at 9.) Plaintiff points to her physical therapy notes, Dr. Connor Hasbrook's November 2021 lumbar MRI, and other various physical examination findings. (ECF No. 16 at 9-10 (citing R. 393, 426, 523, 532-33, 535, 539, 541, 545, 560, 580-81).) As Plaintiff admits, the ALJ explicitly noted "some of these findings." (*Id.* at 10; *see also* R. 21 (noting lumbar tenderness and citing R. 393); R. 22 (noting results of MRI and citing R. 523); *id.* (noting Plaintiff's physical therapy appointments in October-November 2021 and citing R. 531-32, 534, 536, 538, 540, 542); *id.* (noting Plaintiff's antalgic gait and other findings and citing R. 580-81).) In other instances, while the ALJ did not reference the exact notations Plaintiff cites, she clearly reviewed and referred to the exhibits containing those notations. (R. 22 (citing other portions of the 9/15/21 visit that includes R. 426); *id.* (citing other portions of the physical therapy visits that include R. 532, 535, 539, 541, 545); *id.* (citing other portions of November 2021 orthopedic evaluation that includes R. 560).) "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Instead, while discussing the evidence supporting the decision, an ALJ "also must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Id.* at 1010. Here, Plaintiff has not adequately explained how the information in the uncited pages of the record provide any symptoms or medical findings that are not already addressed elsewhere in the ALJ's decision. Rather, in essence, Plaintiff is asking the Court to reweigh the evidence, which it cannot do. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The Court will not substitute its opinion for that of the Commissioner.

Plaintiff next argues that the ALJ improperly discounted her symptoms based on her "minimal and conservative treatment" without considering the reasons that she might not have sought treatment, such as a lack of insurance. (ECF No. 16 at 10-11 (citing SSR 16-3p, at *9).) But, as Plaintiff later admits, the ALJ did consider the fact that Plaintiff initially lacked insurance. (R. 21.) The ALJ then went on to evaluate the treatment Plaintiff did receive, noting its minimal nature—up until the point Plaintiff was "referred to orthopedic surgery" in December 2021. (R. 21-22.) Plaintiff argues the ALJ improperly faulted Plaintiff for not having evidence that she followed up on this referral.[12] (ECF No. 16 at 12 (citing R. 23).) But, this issue was known and raised by the ALJ at the hearing, who held the record open to allow Plaintiff time to supplement with records as to several issues, including what happened after her doctor reviewed the MRI. (*E.g.*, R. 69-71.) The ALJ also invited Plaintiff's counsel to send a note if he was unable to obtain the additional records in time. (R. 71.) On December 28, 2021, Plaintiff submitted the records of her December 15 appointment to review the MRI, where referral to a surgical spine specialist occurred. (R. 571-93.) On December 29, 2021, Plaintiff asked for the record to be held open an additional two weeks to allow for additional evidence to be obtained. (R. 325.) On January 4, 2022, Plaintiff's counsel said they were still waiting for records from the Warren Clinic for "12/16/2021 – Present" and relating to issues including "surgical consult on back." (R. 594.) Plaintiff then provided a note from Warren Clinic that there were no records available from those dates. (R. 603-604.) When the ALJ finally issued her decision on February 9, 2022, she noted that it had been "nearly six weeks since the

---

[12] "Notably, this referral was made on December 15, 2021, and the administrative hearing was held on December 13, 2021. Thus, the lack of evidence for a follow-up on this referral isn't unusual given that the visit where [Plaintiff] got the referral was two days after the hearing, and this evidence was submitted after the hearing." (ECF No. 16 at 12.)

hearing and no additional records have been received other than" the ones she noted in her decision. (R. 15.) When a claimant is represented by counsel, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). In these circumstances, it was reasonable for the ALJ to note the lack of follow up from the December 15 referral in the record, infer that none had occurred to date, and note its effect on her evaluation of Plaintiff's symptoms.

Finally, Plaintiff argues the ALJ failed to explain the link between the medical evidence reviewed and her rejection of Plaintiff's alleged standing and walking limitations. (ECF No. 16 at 8-9 (citing *Ryshana W. v. Kijakazi*, No. 20-CV-541-CDL, 2022 WL 850512 (N.D. Okla. Mar. 22, 2022).) In *Ryshana W.*, the ALJ rejected the claimant's symptom testimony for only two reasons—her ability to work part-time and her lack of assistive devices. *Id.* at *6. Magistrate Judge Christine D. Little found this explanation inadequate, when it failed to address the claimant's alleged sitting limitations, ignored certain range-of-motion findings, and ignored additional testimony that contradicted the inferences the ALJ drew from the part-time work. *Id.* at *6-8. By contrast, in this case, the ALJ spent most of her analysis discussing the medical records and findings relating to Plaintiff's back problems. (R. 21-23.) The ALJ did so in the context of analyzing the functional limitations raised by Plaintiff—which, as it related to her back were "that she could stand for 30-45 minutes and could sit for 30 minutes at one time" and that "she mainly laid down during the day due to leg weakness and back pain." (R. 21.) The ALJ did not need to repeatedly use the words "stand" or "walk" when analyzing Plaintiff's back-related medical history and pain. It is clear from the context that these were the only functional limitations being discussed.

### B. The ALJ Did Not Err in Forming the RFC because the ALJ Considered the Relevant Evidence and Provided a Sufficient Narrative Discussion

Ultimately, Plaintiff argues that the ALJ failed to explain how she reached an RFC for light work, with no limitations in standing or walking, in violation of SSR 96-8p, 1996 WL 374184 (July 2, 1996). (ECF No. 16 at 4-7.) A claimant's RFC is her "*maximum remaining ability to do sustained work activities in an ordinary work setting*" for 8 hours a day, 5 days per week, despite her medical impairments and symptoms. SSR 96-8p, at *2. In assessing the RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.* at *7. In other words, the ALJ must explain the basis for the limitations included in the RFC, with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id.* Furthermore, if the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.*

In this case, as noted above, there were no medical opinions stating that Plaintiff's ability to stand or walk was in any way limited. There were medical findings relating to Plaintiff's gait, flexion and extension, strength, and range of motion, which the ALJ cited. (R. 21-22.) There was also imaging that the ALJ cited (R. 22-23), although the ALJ could not necessarily infer work-related functional limitation based simply on those results. *Cf.* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(C)(3)(c) (explaining that—for purposes of the listings—while imaging "can provide evidence of physical abnormalities," they "may correlate poorly with . . . symptoms . . . or functioning," and the ALJ "will not use findings on imaging . . . as a substitute for findings on physical examination about [claimant's]

14

ability to function, nor can [she] infer . . . functional limitations based solely on such tests"). The ALJ, as noted above, rejected Plaintiff's assertions that she was limited in her ability to stand and walk.

From this, Plaintiff seems to infer that there was no explainable basis for the ALJ's decision to limit her to light work (instead of sedentary) or not to provide any additional limitations on her ability to stand or walk. (*See* ECF No. 16 at 6.) Plaintiff then points to *Veronica M.H. v. Kijakazi*, No. 20-CV-460-JFJ, 2022 WL 709184, (N.D. Okla. Mar. 9, 2022), as being "instructive." (ECF No. 16 at 6-7.) As Plaintiff notes, in *Veronica M.H.*, the ALJ similarly found the claimant's symptoms inconsistent with other evidence, and the agency physicians had provided no opinion as to the RFC. *Id.* at *4. The ALJ then concluded that the RFC generally accommodated the claimant's impairments and "bona fide symptoms." *Id.* Magistrate Judge Jodi F. Jayne found the ALJ failed to explain how the evidence supported the RFC assessment. *Id.* Judge Jayne specifically faulted the ALJ for failing to "specify how he accounted for [the claimant's] severe right knee osteoarthritis and spondylosis," noting that the ALJ had—instead—tied certain limitations to the claimant's severe impairment of obesity. *Id.* at *4 & n.2. A similar situation is not present in this case. Here, the ALJ found Plaintiff had only one severe impairment—degenerative disc disease—along with some non-severe impairments that would likely have little effect on the limitations found in the RFC (GERD, asthma, Raynaud's, peripheral artery disease, and hypertension). (R. 17.) Moreover, when explaining the RFC for light work, the ALJ specifically noted Plaintiff's degenerative disc

disease and the evidence that informed her decision. (R. 22-23.[13]) The ALJ adequately explained her RFC determination as it related to Plaintiff's impairments.

The Court finds the ALJ's RFC analysis meets the narrative discussion requirements of SSR 96-8p, and the ALJ's conclusions are supported by substantial evidence. Although Plaintiff disagrees with the ALJ's interpretation of the evidence, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cowan*, 552 F.3d at 1185. Even if the evidence could support a different finding, the Court cannot "displace the agency's choice between two fairly conflicting views . . . ." *Id.*

## C. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 29th day of December, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[13] "The objective medical evidence does not show that the claimant's impairments would prevent her from performing a limited range of light work activity. Significantly, the claimant has received minimal and conservative treatment. Particularly regarding her degenerative disc disease, the claimant's back pain has been managed solely with pain medication and seven visits of physical therapy. Although the claimant received a referral to orthopedic surgery, no additional evidence showing follow up had been submitted. Though she presented to physical therapy with a cane, it was the first time the claimant indicated she used a cane, and the record does not show it was prescribed or recommended by one of her doctors." (R. 22-23 (citations omitted).)